# IN THE UNITED STATE DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **DR. STEPHANIE BARBER** )<br>)<br>PLAINTIFF )<br>)<br>) CIVIL ACTION NO. 3:21-cv-580-CRS<br>V.S. )<br>)<br>**HORIZONS YOUTH SERVICES LC** )<br>314 CORNERSTONE LANE )<br>ROCKINGHAM, VA  22802 )<br>  SERVE REGISTERED AGENT: )<br>    CORPORATION SERVICE COMPANY )<br>    421 WEST MAIN STREET )<br>    FRANKFORT, KY 40601 )<br>AND )<br>)<br>IAN CRUMP, )<br>  in his professional and individual capacity )<br>    as Vice President of Operations )<br>  **HORIZONS YOUTH SERVICES LC** )<br>  314 CORNERSTONE LANE )<br>ROCKINGHAM, VA  22802 )<br>  SERVE REGISTERED AGENT: )<br>    CORPORATION SERVICE COMPANY )<br>    421 WEST MAIN STREET )<br>    FRANKFORT, KY 40601 )<br>)<br>DEFENDANTS ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dr. Stephanie Barber (hereinafter "Plaintiff" or "Dr. Barber"), by and through her undersigned Counsel, and as for her complaint in this action against the Defendants, Horizons Youth Services, LC who are operating the Whitney M. Young Job Corps Center as a result of a contract with the United States Department of Labor;  and Ian Crump, in his professional and individual capacity as the Vice President of Operations for Horizons Youth Services, LC, hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions of law regarding the unlawful employment practices of the Defendants.

2. This Court also has supplemental jurisdiction over the Plaintiff's related claims arising under the state and local laws pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINSTRATIVE PROCEDURES

4. Prior to the filing of this complaint, the Plaintiff filed a charge of discrimination with the Kentucky Commission on Human Rights (hereinafter "KCHR") that was presented to the Equal Employment Opportunity Commission (hereinafter "EEOC").

5. That it is believed that all of the documentation related to the investigation by the KCHR and the EEOC has yet to provided and once of the necessary documentation has been provided, the Plaintiff may seek to amend the complaint based on the additional documentation.

## PARTIES

6. Plaintiff, Dr. Stephanie Barber, is a resident of Clark County, Indiana. However, at all relevant times, the Plaintiff was employed in the Commonwealth of Kentucky and met the definition of an employee under all applicable statutes in the Commonwealth of Kentucky.

7. Defendant, Horizons Youth Services, LC (hereinafter "HYS) according to the Kentucky Secretary of State has its principal office at 314 Cornerstone Lane, Rockingham, Virginia 22802 and operates the Whitney M. Young Job Corps Center located at 8460 Shelbyville Road, Simpsonville, Kentucky  40067 as a result of a contract with the United States Department of Labor.

8. Defendant, Ian Crump, in his professional and individual capacity as the Vice President of Operations for Horizons Youth Services, LC, was the Vice President of Operations for HYS during the times of the alleged unlawful employment practices.

## GENERAL ALLEGATIONS

9. Dr. Barber  is an African American female who was employed by Defendant HYS in the capacity of Center Director for the Whitney M. Young, Jr.  Job Corps Center from January 1, 2020, until her wrongful termination on February 25, 2021.

10. Prior to her position as the Center Director, Dr. Barber was employed with HYS as the Interim Education and Training Director from September 2019 until December 31, 2019 and had worked with HYS in the past for several years prior to position as the Education and Training Director.

11. That Dr. Barber has a Doctorate in Education from Spaulding University, a Masters Degree in Theology from Campbellsville University, a Bachelor of Arts Degree in Pastoral Ministries from Campbellsville University and an Associate of Science Degree from Campbellsville University.

12. That in September 2019, the Plaintiff was rehired by HYS to be the Interim Education and Training Director for the Whitney M. Young, Jr. Job Corps Center (hereinafter "WMYJCC").

13. That in January 2020, Dr. Barber accepted the HYS position of Center Director for WMYJCC.

14. That not too long after accepting the position as Center Director, Ian Crump (hereinafter "Crump), the Vice President of Operations for HYS, had told Dr. Barber that now that she had the position that there will be people who will come against her and will not treat her nicely because of her position as the director.

15. That in May 2020, Crump contacted Dr. Barber and said he had received an anonymous letter indicating that Dr. Barber is a part of Black Lives Matters, that she attends an all African-American church and that has hired people who are African-American indicating that Dr. Barber's Facebook account needs to be reviewed.

16. That Dr. Barber requested that she see a copy of the anonymous letter, however she was denied the opportunity to see the letter.

17. That Dr. Barber was subsequently advised that an investigation was launched based on the letter and that her Facebook account had been reviewed as well as where she attended church.

18. That Dr. Barber was advised that the investigation of the letter determined that there were no issues.

19. That there was a second anonymous letter sent to HYS in October 2020 and Dr. Barber was again advised about the letter but was never allowed to see the letter.

20. That Dr. Barber was advised that the letter contained the same allegations as the first letter and indicated that Dr. Barber was a racist and that she does not listen to her management team.

21. That while Dr. Barber disputed the allegations a second time in the letter, HYS gave Dr. Barber a coaching as an adverse disciplinary action and indicated that she needed to make an improvement even though they determined that the allegations were unfounded but that she needed to allow other managers to provide feedback and visit with the other managers more in their offices.

22. That during this time period, Dr. Barber had reported that she was having some issues with some of the employees. In particular she advised that another manager, Freda Davis, was making racial comments about her to other employees and even indicated that Dr. Barber was involved in drugs.

23. That Dr. Barber addressed it with Ms. Davis through with the Human Resources Department, however Ms. Davis continued to make the racist remarks and continued to make slanderous comments about Dr. Barber.

24. That Dr. Barber was also having issues with Mr. Duvall and Ms. Kitchens and the information was reported to HR but the issues and problems continued.

25. That even though the issues were reported, nothing occurred to address the issues.

26. That HYS employees continued to report to Dr. Barber about the continual racial slurs and slanderous comments that were continuing to be made and it was alarming to the other HYS employees.

27. That the issues and problems were even addressed to Mr. Crump and he appeared to be annoyed due to the continual reporting of the issues. No steps were taken to addresses the issues concerning the racial remarks and slanderous comments made by the reported managers to other employees and staff at HYS.

28. That Dr. Barber's nephew was receiving services through HYS.

29. That when a package was dropped off for her nephew on February 4, 2021, there were concerns about what was included in the package.

30. That there was an independent investigation concerning the package contents that was conducted by the senior security officer at the time, Lewis Gilbert and the investigation of package resulted in unfounded allegations concerning illegal substances.

31. That as part of the continual harassment of Dr. Barber, Mr. Crump was contacted with a falsified story concerning Dr. Barber's involvement with the drugs concerning her nephew and how Dr. Barber had used another employee at WMYJCC to cover up what was occurred. It is believed that Ms. Davis, Ms. Kitchens and Ms. Duvall may be the ones involved with the continual spreading of the these lies concerning Dr. Barber.

32. That Mr. Crump made the decision to terminate Dr. Barber's nephew from the program and advised Dr. Barber that she was unkind, unprofessional, and not a positive person.

33. That prior to making this decision, Mr. Crump never discussed what had occurred with Dr. Barber or Mr. Gilbert about what had happened but rather relied on the inaccurate version that was given to him without a proper investigation concerning the unfounded and untrue racially charged allegations.

34. That Dr. Barber reached out to the president of HYS, Peter Calvo, concerning the wrongful termination of her nephew from the program and all of the issues that she was having with the employees.

35. That Dr. Barber also reached out to the Department of Labor about what was going on at HYS.

36. That when Mr. Crump learned that Dr. Barber had reached out to Mr. Calvo, he was upset and told her that she should not have notified him of anything but instead should be reporting things to human resources only.

37. That Mr. Crump also learned that the Department of Labor was advised of what was going on and that Dr. Barber's nephew had challenged the decision to terminate him from the program with the Department of Labor.

38. That Dr. Barber's employment was terminated a week after she had made the verbal report to the Department of Labor and after Mr. Crump learned that the decision to terminate the Plaintiff's nephew from the WMYJCC was overturned by the Department of Labor which required her nephew to be reinstated into the program.

39. That the white employees who were similarly situated with Dr. Barber and actually had confirmed complaints from the Human Resources Department concerning harsh treatment to employees and previous sexual harassment claims was not terminated by HYS but rather continued their employment with HYS.

40. That there were also male employees who were similarly situated with Dr. Barber that has complaints sent to HR concerning sexual harassment and intoxication on the job and their employment was not terminated.  One of the male employees was even promoted.

41. That Dr. Barber, being an African American female, with unfounded HR complaints was terminated.

42. That Dr. Barber was retaliated against by Mr. Crump because she reported what was occurring at HYS with the president of HYS and with the Department of Labor.

43. That Mr. Crump conspired with the Defendant HYS employees and agents concerning the incident regarding Dr. Barber's nephew with that incident and the racist reports from the HYS employees as grounds to wrongfully terminate the employment of Dr. Barber.

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. § 2000e, et. seq.**

44. That the Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

45. That the Plaintiff is an African-American female and is a member of a protected class.

46. That the Defendants were aware that the Plaintiff was an African-American female.

47. That the Plaintiff was denied equal employment opportunity, was racially harassed, was racially discriminated against and was retaliated against for reporting her claims about the Defendants, its agents, and employees.

48. That the Plaintiff was treated differently than the similarly situated white employees who were treated more favorably than the Plaintiff with the Defendant with regard to disciplinary practices, adverse employment actions, advancement, and promotions.

49. That the Defendant, its agents, and employees discriminated against the Plaintiff in its advancement, promotional practices, and disciplinary treatment on account of the Plaintiff's race, and color and in violation of Title VII of the Civil Rights Act as of 1964 as amended by the Civil Rights Act of 1991.

50. That as a result of the unlawful employment practices of the Defendants, the Plaintiff suffered damages.

## VIOLATION OF KENTUCKY CIVIL RIGHTS ACT AND RACIAL DISCRIMINATION AND DISCRIMINATION BASED ON SEX PURSUANT TO KRS 344.040, ET. SEQ.

51. That the Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

52. That the Plaintiff as an African American female is a member of a protected class and the Defendants were aware that the Plaintiff was an African American female.

53. That the Plaintiff was denied equal employment opportunity, was racially harassed, was racially discriminated against, and was retaliated against for reporting her claims by the Defendant, its agents and employees based on the Plaintiff's race and color.

54. That the Plaintiff is able to show that similarly situated white employees and similarly situated males were treated more favorably than the Plaintiff with the Defendant with regard to disciplinary practices, advance promotion, and adverse employment actions.

55. The Defendant, its agents and employees discriminated against the Plaintiff discriminated against the Plaintiff on account of the Plaintiff's race, color, and sex in violation of Kentucky Revised Statute KRS 344.040, et. seq.

## VIOLATION OF KRS 344.045

56. That the Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

57. That the Defendants, by failing to promote the Plaintiff as she was the next in line for seniority for the position of Associate Vice Principal, violated KRS 344.045.

58. That as a result of the unlawful employment practices of the Defendants, the Plaintiff suffered damages.

## RETALITATION AGAINST THE PLAINTIFF IN VIOLATION OF KRS 344.280

59. That the Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

60. That the actions of the Defendants described herein constitute unlawful retaliation against the Plaintiff by the Defendant, Ian Crump, thereby subjecting Ian Crump to individual liability pursuant to KRS 344.280 as well as the Plaintiff's employer, HYS.

61. That the Plaintiff suffered damages as a result of the Defendants' unlawful actions.

## VIOLATION OF KRS 61.101, ET. SEQ. (KENTNTUCKY WHISTLEBLOWER ACT)

62. That the Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

63. That the actions of the Defendants in this action constitutes unlawful retaliation in violation of KRS 61.101, et. seq. (Kentucky Whistleblower Act)

64. That as a result of the Defendants' unlawful actions, the Plaintiff suffered damages.

## JURY DEMAND

65. The Plaintiff, Dr. Barber, hereby demands a jury trial on all questions of fact and damages stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Dr. Stephanie Barber, prays that the Court enter judgment in her favor and against the Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein violate the laws of the United States of the Commonwealth of Kentucky;

B. An injunction and order permanently restraining the Defendants from engaging in such unlaw conduct;

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who exercise their federally protected rights to complain about discrimination and which eradicate the effects of its past unlawful employment practices;

D. Order Defendant to make whole Dr. Barber by providing appropriate back pay with prejudgment interest and other affirmative and equitable relief necessary to eradicate the effects of its unlawful employment practices;

E. Order Defendant to provide training to its officers, managers and employees regarding discriminatory harassment and retaliation in the workplace;

F. An award of damages in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

G. An award of damages in an amount to be determined at trial, plus prejudgment and post judgment interest to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for mental anguish, emotional distress, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering and any other physical or mental injuries;

H. An award of damages in an amount to be determined at trial, plus prejudgment and post judgment interest to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment.

I. An award of damages for any and all other monetary and/or non-monetary losses suffered by the Plaintiff in an amount to be determined at trial, plus prejudgment and post judgment interest;

J. An award of punitive damages;

K. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law;

L. Compensatory and punitive damages for violation of KRS 344.010, 344.045, et. seq., KRS 344.280,  KRS 61.101, et. seq. and unlawful retaliation;

M. Attorney Fees in accordance with Title VII, KRS 344.010, et. seq., KRS 344.280, and KRS 61.101, et. seq.;

N. Injunctive relief pursuant to KRS 61.101, et. seq., and

O. Such other and further relief as the Court may deem just and proper that the Plaintiff may be entitled.

Dated: September 19, 2021

Respectfully submitted,

/s/Bethanni Forbush-Moss
Law Offices of Forbush-Moss PSC
10413 Taylorsville Road
Louisville, KY 40299
(502) 267-6262 Fax (502) 267-6565
Attorney@KentuckianaLaw.net

**VERIFICATION**

I, Dr. Stephanie Barber, hereby swear or affirm that I have read the above Verified Complaint and Demand for a Jury Trial and that the allegations contained thereinafter true and correct to the best of my information and belief.

/s/ Dr. Stephanie Barber
DR. STEPHANIE BARBER