UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DR. STEPHANIE BARBER, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 3:21-cr-00051-GFVT |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| HORIZON YOUTH SERVICES, LC, ) | **ORDER** |
| *et al*, ) | |
| ) | |
| Defendant. | |

*** *** *** ***

This matter is before the Court on Defendant Horizon Youth Services, LC's Motion to Dismiss [R. 12-1.] On February 25, 2021, Plaintiff Dr. Stephanie Barber was terminated from her employment with Defendant Horizon Youth Services, LC. [R. 1 at 3, 7.] Dr. Barber alleges that her termination was because of her race in violation of various statutes. [R. 1 at 8-10.] Because Dr. Barber has failed to state a claim upon which relief can be granted as to three of her claims, Horizon's Motion to Dismiss [R. 12-1] is **GRANTED**.

I

Plaintiff Dr. Stephanie Barber, an African-American woman, began working for Defendant Horizon Youth Services, LC as Center Director for the Whitney M. Young, Jr. Job Corps Center beginning in January 2020. [R. 1 at ¶ 9.] Before her promotion to Center Director, Dr. Barber was employed by Horizon in at least one other position of leadership. *Id.* at ¶ 10. Beginning in May 2020, Horizon's Vice President of Operations, Ian Crump, informed Dr. Barber that he had received a complaint against her for being a member of the Black Lives Matter movement, for attending an all African-American church, and for hiring African-American employees. *Id.* at ¶ 15. The complainant further requested that her Facebook account

be reviewed by her superiors. *Id.* Though an investigation was launched based on the complaint, Dr. Barber was later informed that "there were no issues." *Id.* at ¶¶ 17-18. In October 2020, a second anonymous complaint was filed against Dr. Barber which reiterated the same allegations as the May 2020 complaint, but also asserted that "Dr. Barber was a racist and that she does not listen to her management team." *Id.* at ¶ 20. In response to the October complaint, Horizon "gave Dr. Barber a coaching […] and indicated that she needed to make an improvement […] and allow other managers to provide feedback […]." *Id.* at ¶ 21.

During this same period, Dr. Barber made several reports to Horizon's human resources department in which she alleged other managers and employees made "racial comments about her" and "even indicated that [she] was involved in drugs." *Id.* at ¶ 22. Dr. Barber alleges that "nothing occurred [in response to her reports] to address the issues." *Id.* at ¶ 25. Further, in February 2021, Dr Barber's nephew, who was receiving services through Horizon, was terminated from his services program after allegedly being reported for receiving a package of drugs at the facility. *Id.* at ¶¶ 30-34. Dr. Barber alleges that his expulsion was ordered "without a proper investigation," was "part of the continual harassment" against her, and that other employees even falsely spread that she was involved in her nephew's receipt of the package. *Id.*

Soon after, in response to her nephew's expulsion from Horizon and the history of issues she alleges to have faced, Dr. Barber contacted both the president of Horizon and the Department of Labor. *Id.* at ¶¶ 34-35. But one week after making her verbal report to the DOL, she was terminated from her position. *Id.* at ¶ 38. Dr. Barber's nephew was eventually reinstated into his program at Horizon after the DOL overturned Horizon's decision to expel him. *Id.* Now, Dr. Barber alleges that she was terminated because of her race and gender in violation of Title VII and the Kentucky Civil Rights Act. [R. 1 at 9.] She also alleges that Horizon violated KRS

§ 344.045 for failing to promote her to an Associate Vice Principal, retaliated against her for making a report to the DOL in violation of KRS § 344.280, and separately violated Kentucky's Whistleblower Act by terminating her. *Id.* at 9-10.  In opposition, Horizon moves for dismissal of Dr. Barber's Title VII, KRS § 344.045, and Whistleblower Act claims under Federal Rule of Civil Procedure 12(b)(6).[1]  [R. 12-1.]  Dr. Barber has not responded to Horizon's request for partial dismissal and the time for filing a response has now passed.  This matter is now ripe for review.

II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint.  In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inference." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

The Supreme Court has explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).  Otherwise stated, it is not enough for a claim to be merely possible; it must also be "plausible."  *See Courie*, 577 F.3d at 630.  According to the Court, "[a]

---

[1] The Court notes that Dr. Barber initially sued Defendant Ian Crump, Horizon's Vice President of Operations, alongside Horizon.  [R. 1.]  But after the Court entered a show cause order requiring Dr. Barber to explain whether Mr. Crump had been properly served pursuant to Fed. Rule of Civil Procedure 4(e), she moved for his dismissal.  [R. 15; R. 16.]  Accordingly, all claims against Defendant Ian Crump are **DISMISSED.**

3

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, under limited circumstances, a claim may be rendered plausible if a plaintiff pleads its "information and belief" with supporting facts. *See Modern Holdings v. Corning Incorporated*, 2015 U.S. Dist. LEXIS 41134 at *12 (E.D. Ky. March 31, 2015) ("[w]hile pleading on information and belief cannot insulate a plaintiff at the 12(b)(6) stage, *Iqbal* did not render pleading on information entirely ineffectual"); *e.g.*, *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . .")).

## A

Horizon first requests dismissal of Dr. Barber's Title VII claim. In support, Horizon notes that before a plaintiff may bring a discrimination suit under Title VII, she must first exhaust her administrative remedies. [R. 12-1 at 6.] Horizon specifically contends that "[a] Title VII plaintiff may only file suit after receiving a 'right to sue letter' from the [Equal Employment Opportunity Commission]. The suit must be brought within ninety (90) days after receipt of the 'right to sue letter.'" *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)); *see also Alexander v. Univ. of Memphis*, 2021 U.S. App. LEXIS 16949, at *9-*10 (6th Cir. 2021) ("Before filing suit in federal court, a Title VII plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC and receiving a right-to-sue letter. The EEOC exhaustion requirement is not jurisdictional; instead, it is a claim-processing rule."); 42 U.S.C. § 2000e-5(f)(1). Dr. Barber, having failed to respond to Horizon's Motion, does not contend that she has exhausted her administrative remedies. A review of her

Complaint further indicates that she has not exhausted her administrative remedies with the EEOC nor received a right to sue letter. [*See* R. 1 at 1 (indicating that the EEOC's review process is not yet complete).] Consequently, because Dr. Barber has not exhausted her administrative remedies, her Title VII claim is **DISMISSED WITHOUT PREJUDICE**.

B

Next, Horizon argues that Dr. Barber's Complaint fails to "assert facts supporting a cause of action under KRS [§] 344.045." [R. 8 at 8.] Section 344.045 forbids statutorily defined employers from establishing "any employment practices affecting the terms, conditions, and privileges of employment in derogation of an established seniority system or which contravenes an existing collective bargaining agreement." KRS § 344.045. In her Complaint, Dr. Barber alleges that Horizon violated Section 344.045 by failing to promote her, "as she was the next in line for seniority for [*sic*] the position of Associate Vice Principal." [R. 1 at ¶ 57.] In opposition, Horizon argues that it "does not have a position entitled Associate Vice Principal," and, that even if it did, the position would not be considered a "promotion" because Dr. Barber already held the most senior role at the company. [R. 12-1 at 8.] Dr. Barber offers no response to Horizon's request for dismissal.

Though the Court must accept as true Dr. Barber's allegation that she was "next in line for the position of Associate Vice Principal," she has nonetheless failed to state a claim. *DirecTV, Inc. v. Treesh*, 487 F.3d at 476. This is because, while Dr. Barber alleges that she was "next in line" for a promotion, she neither pleads that Horizon has an "established seniority system" nor pleads that her termination violated an "existing collective bargaining agreement." [*See* R. 1 at 9; *see also Saunders v. Ford Motor Co.*, 2105 U.S. Dist. LEXIS 7059, at *17-*18 (W.D. Ky. Jan. 21, 2015) (where Plaintiff properly pled the existence of a collective bargaining

5

agreement and seniority system).] Accordingly, Dr. Barber has failed to state a claim and her Section 344.045 claim is **DISMISSED**.

C

Finally, Horizon argues that Dr. Barber's Kentucky Whistleblower Act claim should be dismissed because it is not an "employer" of the Commonwealth governed by the Act. [R. 12-1 at 9.] KRS § 61.101 defines an "employer" subject to the Kentucky Whistleblower Act as follows: "the Commonwealth of Kentucky or any of its political subdivisions. Employer also includes any person authorized to act on behalf of the Commonwealth, or any of its political subdivisions, with respect to the formulation of policy or the supervision, in a managerial capacity, of subordinate employees." KRS § 61.101(2). In support of dismissal, Horizon states that it is not a political subdivision of the Commonwealth because "its principal office is in Virginia and [it] contracts with the DOL." [R. 12-1 at 9.] Dr. Barber, as before, offers no response in opposition to dismissal.

Dismissal is also warranted as to Dr. Barber's Whistleblower Act claim. To determine whether an employer is subject to Kentucky's Whistleblower Act, courts must generally analyze the employer's governing documents or an enabling statute. *See, e.g.*, *Louisville & Jefferson Cty. Metro Sewer Dist. v. Hill*, 607 S.W.3d 549, 553-54 (Ky. 2020); *N. Ky. Area Dev. Dist. v. Wilson*, 610 S.W.3d 916, 926 (Ky. 2020). In this matter, Dr. Barber only pleads that Horizon has a principal office in Virginia and operates in Kentucky. [R. 1 at 3.] Because she does not plead that Horizon is a political subdivision of the Commonwealth, does not defend against Horizon's contention that it is not an "employer" under the Act, and fails to provide any relevant information about Horizon's establishment for the Court to analyze, her Whistleblower Act claim is **DISMISSED**.

6

### III

Having reviewed Horizon's briefing, Dr. Barber having filed no response in opposition, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Horizon's Motion to Dismiss [R. 12] is **GRANTED** and Dr. Barber's Title VII is **DISMISSED WITHOUT PREJUDICE**, while her KRS § 344.45, and Kentucky Whistleblower Act claims are **DISMISSED**;

2. Dr. Barber's Motion to Dismiss Defendant Ian Crump [R. 16] is **GRANTED**.

This the 23d day of June, 2022.

Gregory F. Van Tatenhove
United States District Judge